<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DANIEL RISIS,<br><br>Plaintiff,<br><br>v.<br><br>U.S. TRUSTEE DEPARTMENT, *et. al.*,<br><br>Defendants. | Case No. 2:24-cv-7922 (BRM)(CLW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are seven motions. Defendant Chris Gengaro ("Gengaro") moves to dismiss ("Gengaro Motion to Dismiss") Plaintiff Daniel Risis's ("Risis") complaint ("Complaint") for failure to submit a sufficient pleading, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), and 12(b)(6). (ECF No. 10.) Defendant Richard Trenk ("Trenk") moves to dismiss ("Trenk Motion to Dismiss") the Complaint for violating a final order of the Bankruptcy Court ("Bankruptcy Court Order") expressly denying Risis authority to commence litigation, or, alternatively, under the doctrines of claim preclusion, issue preclusion or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 11.) Defendant Honorable Joseph V. Isabella, J.S.C. (ret.) moves to dismiss ("Isabella Motion to Dismiss") the Complaint for failure to submit a sufficient pleading under Fed. R. Civ. P. 8(a) and pursuant to the *Rooker-Feldman* Doctrine. (ECF No. 20.) Defendants West Orange Chief of Police James Abbott ("Abbott"), West Orange Mayor Susan McCarthy ("McCarthy"), and West Orange Township Attorney Richard D. Trenk ("Trenk") (collectively, the "West Orange Defendants") move to dismiss ("West Orange Defendants Motion to Dismiss") the Complaint

1

based on insufficient pleading under Fed. R. Civ. P. 8(a), lack of subject matter jurisdiction under Rule 12(b)(1), failure to state a claim pursuant to Rule 12(b)(6), failure to satisfy the requirements of New Jersey Tort Claims Act, and as barred by prior bankruptcy litigation, *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. (ECF No. 24.) Defendants Anthony Sodono, III, ("Sodono"), Donald Biase ("Biase"), and Brian Boms ("Boms") move to join the Trenk Motion to Dismiss and subsequent reply brief (ECF Nos. 12, 29), and the West Orange Defendants likewise move to join the Trenk Motion to Dismiss (ECF No. 14).

Having reviewed the submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, Defendants' Motions are **GRANTED**, and the Complaint is **DISMISSED** without prejudice and with leave to amend consistent with the guidance in this Opinion.

## I.    BACKGROUND

For purposes of this Motion, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the plaintiff. *See Philips v. Cnty. Of Alleghany*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added).

Given Risis is proceeding *pro se*, the Court attempts to glean his factual allegations and legal claims through liberal construction of his pleading. *See Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005); *Cooke v. Experian Info. Sols., Inc.*, Civ. A. No. 22-05375, 2024 WL 1142214, at *2 (D.N.J. Mar. 15, 2024) ("When considering a motion to dismiss the complaint of a *pro se* litigant, courts must bear in mind that such pleadings are held to less stringent standards

than more formal pleadings drafted by lawyers."); *Huff v. Atl. Cnty. Just. Facility*, Civ. A. No. 20-9761, 2021 WL 307303, at *2 (D.N.J. Jan. 29, 2021) ("Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making."). To address the dearth of factual allegations in the Complaint, particularly regarding an underlying bankruptcy court case, this Court relied on Defendants' moving papers to ascertain the full factual background and procedural history.

### A. Factual Background

Risis is a 41-year-old man residing in Livingston, New Jersey, with his wife and two small children. (ECF No. 1 ¶¶ 1(a), 21(a).) On July 19, 2024, Risis filed the Complaint in his own capacity and on behalf of his various businesses. (*Id.*) He alleges a conspiracy and fraud scheme by Defendants stemming from a bankruptcy proceeding. (*Id.*) When Risis filed for bankruptcy, he alleges he and his businesses owned approximately 24 commercial buildings and had "an estate valued at approximately $20,000,000 in real estate and an estimated $80,000,000 in claims owed by individuals or companies." (*Id.* at ¶ 21(c).)

According to the Gengaro Motion to Dismiss, Matthew Leff ("Leff"), Risis's longtime business partner, filed a complaint with the Chancery Division of the Superior Court of New Jersey in Essex County ("Chancery Case") seeking "(1) appointment of a custodian or provisional manager over jointly owned properties, (2) partition or sale of the properties, (3) dissolution of the companies, and (4) an accounting" on March 16, 2022. (ECF No. 10 at 5.) The state court entered final judgment in the Chancery Case on July 12, 2024, in Leff's favor "in the amount of $1,048,849" and providing for the sale of various properties with proceeds going to Leff. (*Id.* at 6.) While the Chancery Case was ongoing, in early March of 2023, Risis voluntarily filed a Chapter 7 Bankruptcy Petition ("Bankruptcy Case") in the Bankruptcy Court for the District of New Jersey

(the "Bankruptcy Court"). (*Id.*) The Bankruptcy Case involved multiple properties and companies in New Jersey and other states, "including companies subject to the Chancery Division case, which required immediate attention due to fraud," and was ultimately dismissed "for cause and [with] a 180-Day Bar on Refiling." (*Id.* at 6–7.)

According to the Trenk Motion to Dismiss, Biase was appointed to administer Risis's Bankruptcy Case as trustee, and Biase applied to retain Trenk's law firm to assist him in discharging his duties. (ECF No. 11 at 5.) Risis objected to the application to retain the law firm on the ground it presented a conflict of interest, alleging "[t]here is no 'wall' great enough that will prevent and protect me from the prejudices I will face in this case" as a result. (*Id.* at 5–6.) Later, Risis moved to convert the Bankruptcy Case to one under Chapter 11 and included assertions of a conspiracy to cause him injury; on April 5, 2023, the conversion motion was denied and Biase's retention of the law firm was approved by the Bankruptcy Court. (*Id.* at 6–7.) Thereafter, Risis also filed a motion to have Biase removed as trustee, which the Bankruptcy Court denied on April 18, 2023. (*Id.* at 7.)

The Trenk Motion to Dismiss also states Risis failed to cooperate with the real estate professionals appointed by the Bankruptcy Court and, on April 11, 2023, Risis moved the Bankruptcy Court to allow him to withhold the keys to certain property. (*Id.* at 8.) The Trenk Motion to Dismiss lists a series of motions and letters filed as well as other actions taken by Risis amounting to "time-consuming litigation, combined with more unsupported allegations" emblematic of an ongoing "failure to cooperate and overall disregard for his duties as a bankruptcy debtor." (*Id.* at 9.) According to the Trenk Motion to Dismiss, Risis brought a Motion for Authority to Commence Litigation ("*Barton* Motion") against Trenk and many other individuals who are also defendants in the present litigation in the Bankruptcy Case, as well as a Motion for

4

Reconsideration of Legal Fees, based on repeated allegations of fraud and conspiracy. (*Id.* at 15–23.) In a status conference regarding the *Barton* Motion held on October 17, 2023, the Bankruptcy Court instructed Risis "to file a list of every piece of evidence . . . . I want to know specifically what's the testimony, what documents, what videos, you are going to offer as evidence" by November 1, 2023, to which Plaintiff purportedly replied, "I fully understand []." (*Id.* at 15–18.) However, the Trenk Motion to Dismiss contends Risis did not comply with the Bankruptcy Court's directive and "never filed or served a comprehensive evidence list," instead filing three new motions on October 24, 2023, all of which were denied by the Bankruptcy Court on November 14, 2023. (*Id.* at 18–19.) In a hearing on the *Barton* Motion held on November 29, 2023, in explaining why it was denying the motion, the Bankruptcy Court stated:

> I told Mr. Risis pretty clearly[,] and he understood and agreed, that he had to submit more evidence. The November 1st deadline came and went. He did not submit more evidence . . . The law under *Barton* provides that for a Court to grant leave a plaintiff must prove that it has stated a prima facie case against the Trustee . . . Under the *Barton* Doctrine[,] leave of the Bankruptcy Court is required before any party brings an action in another forum against a bankruptcy Trustee or his professionals . . . Mr. Risis has not pointed to any specific evidence that these criminal violations occurred . . . And at [this] point I can understand why the Chapter 7 Trustee did not engage with Mr. Risis because Mr. Risis was accusing him and his attorneys of criminal acts and it was just an unworkable situation.

(ECF No. 11 at 20–22 (emphasis added).) The Bankruptcy Court denied the Motion for Reconsideration of Legal Fees on similar grounds. (*Id.* at 22.) On November 30, 2023, the Bankruptcy Court entered the Order denying Risis authority to commence litigation, and Risis did not seek reconsideration or appeal. (*Id.* at 22–23.)

### B. Procedural History

Risis initiated this lawsuit on July 19, 2024, in which he very generally raises the same or similar allegations of widespread conspiracy and fraud against Defendants as he did before the

Bankruptcy Court. (*See generally* ECF Nos. 1, 11.) Soon thereafter, several Defendants filed their motions to dismiss: (1) on September 26, 2024, Gengaro filed the Gengaro Motion to Dismiss (ECF No. 10) for failure to submit a sufficient pleading, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1), and 12(b)(6); (2) on September 30, 2024, Trenk filed the Trenk Motion to Dismiss (ECF No. 11) for violating the Bankruptcy Court Order denying Risis authority to commence the present litigation, or, alternatively, under the doctrines of claim preclusion, issue preclusion or for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (3) Isabella filed the Isabella Motion to Dismiss on October 4, 2024 (ECF No. 20) for failure to submit a sufficient pleading under Fed. R. Civ. P. 8(a) and pursuant to the *Rooker-Feldman* Doctrine; and (4) the West Orange Defendants filed the West Orange Defendants Motion to Dismiss (ECF No. 24) for insufficient pleading under Fed. R. Civ. P. 8(a), lack of subject matter jurisdiction under Rule 12(b)(1), failure to state a claim pursuant to Rule 12(b)(6), failure to satisfy the requirements of the New Jersey Tort Claims Act, and as barred by prior bankruptcy litigation, *Rooker-Feldman* doctrine, *res judicata*, and collateral estoppel. Additionally, Defendants Sodono, Biase, and Boms move to join both the Trenk Motion to Dismiss and subsequent reply brief (ECF Nos. 12, 29), and the West Orange Defendants similarly move to join the Trenk Motion to Dismiss (ECF No. 14).

On October 2, 2024, Risis filed a letter with the Court expressing his frustrations with his various legal proceedings and asking the Court to order an investigation into his allegations of criminal conduct against Defendants. (ECF No. 21.) On October 4, 2024, Risis filed an Opposition to the Gengaro Motion to Dismiss (ECF Nos. 19, 22)[1], and letter brief in opposition to the Trenk

---

[1] Risis's first Opposition to the Gengaro Motion to Dismiss (ECF No. 19) was filed with an electronic signature, whereas the second (ECF No. 22) opposition document contained a wet signature.

Motion to Dismiss as well as the joinder motions filed by Sodono, Biase, and Boms and the West Orange Defendants (ECF No. 23). Gengaro filed a reply on October 15, 2024. (ECF No. 25.) On October 18, 2024, Risis filed a consolidated opposition addressing the Gengaro, Trenk, Isabella, and West Orange Defendants Motions to Dismiss as well as the joinder motions filed by Sodono, Biase, and Boms and the West Orange Defendants. (ECF No. 26.) On October 28, 2024, Trenk filed a reply to Risis's consolidated opposition. (ECF No. 28.)

On October 30, 2024, Defendants filed a joint letter requesting a stay of discovery pending resolution of the motions to dismiss. (ECF No. 30.) Thereafter, Risis filed notices of bankruptcy filings on January 2 and 3, 2025, and requested an automatic stay of the present litigation pending resolution of the bankruptcy matter. (ECF Nos. 34–35.) In a text order dated January 3, 2025, the Court asked Defendants to respond to Risis's bankruptcy filing notices and stay request by January 10, 2025. (ECF No. 36.) On January 8, 2025, Gengaro filed a letter contending Risis's bankruptcy filing notice "has no impact and should not have any impact on this matter" because Gengaro is not seeking relief from Risis that would be within the Bankruptcy Court's jurisdiction, and that the stay request should be denied. (ECF No. 37.) In similar letters, Defendants Sodono, Biase, and Boms (ECF No. 38), Trenk (ECF No. 39), and Isabella (ECF No. 40) argued the same and joined in Gengaro's letter. In an order filed on January 15, 2025, Judge Waldor denied Risis's stay application without prejudice and ruled the case would proceed in the ordinary course (the "January 15 Order"). (ECF No. 41.) On January 15, 2025, Risis submitted a letter attaching a January 14, 2025 Opinion and Order by Judge William J. Martini, U.S.D.J., which ordered a stay in a separate litigation pending resolution of Risis's bankruptcy action, and repeated his request for a stay here. (ECF No. 42.) Also on January 15, 2025, Gengaro filed a letter asking the Court to either find the Risis's letter deficient as a motion for reconsideration, or, alternatively, deny Risis's

request on the basis that it does not provide an applicable basis for reconsideration of the January 15 Order. (ECF No. 43.) On February 10, 2025, Judge Waldor denied Risis's informal request for reconsideration for failing to establish a viable basis. (ECF No. 44.) Risis repeated his request for a stay of the present litigation on February 14, 2025 (ECF No. 45)[2], and was again denied on April 7, 2025 (ECF No. 47).[3]

## II.    LEGAL STANDARD

### A.   Rule 8(a)

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint "must contain: (1) a short and plain statement of the ground for the court's jurisdiction . . . [;] (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]" The purpose of a complaint is to put the adverse party on notice of the claims against them and inform the court of the nature of the claims, any defenses being asserted, and the relief requested. *See United States ex rel. FLFMC, LLC v. TFH Publ'ns, Inc.*, 855 F. Supp. 2d 300, 304 (D.N.J. 2012). The Supreme Court has explained that "a short and plain statement of the claim[,]" Fed. R. Civ. P. 8(a)(2), entails pleading sufficient factual matter that would "raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, "a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief'" which

---

[2] Risis filed a second, updated letter with a wet signature on February 19, 2025, in response to a quality control message posted to the docket by the Clerk's Office asking him to resubmit the letter because it contained an improper electronic signature. (ECF No. 46.)

[3] There were many additional docket filings submitted outside the ordinary course of motion practice. On October 23, 2024, Risis filed a motion for leave to investigate criminal acts against Defendants, which was referred to Judge Cathy L. Waldor. (ECF No. 27.) In a letter order, Judge Waldor denied Risis's motion for leave to investigate criminal acts without prejudice on October 31, 2024. (ECF No. 31.) On November 5, 2024, Risis filed letters addressing the Court and Judge Waldor "regarding jurisdictional boundaries and judicial responsibilities" and "legal proceedings." (ECF Nos. 32–33.)

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

The Court reads the Motions as arguing the plaintiff in this case fails to sufficiently plead the first two elements of Rule 8(a); namely, Risis does not show jurisdictional grounds to justify review and fails to include sufficient statements of the claims plausibly showing he is entitled to relief. (*See* ECF Nos. 10 at 8–10, 14–17; 11 at 24–26, 32–39.) The standards for dismissal on these grounds are provided in turn.

### B. Rule 12(b)(1)

"When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." *Dickerson v. Bank of Am., N.A.*, Civ. A. No. 12-3922, 2013 WL 1163483, at *2 (D.N.J. Mar. 19, 2013) (quoting *In re Corestates Tr. Fee Litig.*, 837 F. Supp. 104, 105 (E.D. Pa. 1993), *aff'd*, 39 F.3d 61 (3d Cir. 1994)). A motion to dismiss under Rule 12(b)(1) challenging the Court's subject matter jurisdiction asserts the Court lacks "authority or competence to hear and decide the case before it." *Northlight Harbor, LLC v. United States*, 561 F. Supp. 2d 517, 520 (D.N.J. 2008) (citing CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5B FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. 2004)). It requires a plaintiff to bear the burden of pleading that jurisdiction is appropriate. *Id.* at 521; *see also Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 495 (D.N.J. 2015) ("It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction in order to defeat a motion under Rule 12(b)(1)."). In considering dismissal for lack of subject matter jurisdiction, a district court's focus is not on whether the factual allegations entitle a plaintiff to relief, but rather on whether the court has jurisdiction to hear the claim and grant relief. *See Maertin v. Armstrong World Indus., Inc.*, 241

F. Supp. 2d 434, 445 (D.N.J. 2002) (citing *New Hope Books, Inc. v. Farmer*, 82 F. Supp. 2d 321, 324 (D.N.J. 2000)).

The court is tasked with determining "whether [it is] dealing with a facial or factual attack to jurisdiction. If . . . facial [], the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *TFH Publ'ns*, 855 F. Supp. 2d at 304 (quoting *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011)). A factual attack, on the other hand, "concerns not an alleged pleading deficiency, but rather the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *Id.* (quoting *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007)). Moreover, the standard of review for a facial Rule 12(b)(1) attack is the same as one under 12(b)(6). *Id.*

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Id.* at 348. "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (alteration in original) (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)).

Here, Defendants raise a facial 12(b)(1) challenge, given they do not raise arguments concerning any of the underlying facts but rather focus exclusively on deficiencies in the pleadings. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### C. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all

inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."); *Twombly*, 550 U.S. at 555. (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545 (alterations in original). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, assuming factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[D]etailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the Court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022). Furthermore, while *pro se* pleadings are liberally construed, "*pro se* litigants still must

allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (emphasis added).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. *Iqbal*, 556 U.S. at 677. This "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, as a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

III.    **DECISION**

Whether in their own briefings or by joining in the submissions of their co-defendants, Defendants raise many arguments in favor of dismissal which are advanced primarily through the Gengaro and Trenk Motions to Dismiss.

### A.  Gengaro Motion to Dismiss

Gengaro first argues the Complaint must be dismissed for lack of subject matter jurisdiction as it fails to establish an adequate basis for federal question jurisdiction. (ECF No. 10 at 8–10.) He notes Risis makes only general assertions of fraud and other legal violations and "does not include any factual averments or narrative explaining what alleged underlying conduct occurred that supports any reasonable inference to support the claims." (*Id.* at 9.) Gengaro asserts he is protected by the litigation privilege as all claims against him "are premised on his communications and activities in representing his client, Matthew Leff, in the Chancery Case and Bankruptcy Case," and "all actions taken by Gengaro are exclusively connected to the litigation." (*Id.* at 10, 14.) Gengaro also claims the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, as Risis did not set forth each element of fraud (*id.* at 14–17), any alleged constitutional violations (*id.* at 17), negligence or breach of fiduciary duty (*id.* at 18–21), tortious interference (*id.* at 21–22), or violations of N.J.S.A. § 2A:39-1 (*id.* at 22). Gengaro further contends Risis fails to make cognizable claims for negligence in property management pursuant to N.J.S.A. § 2A:44-148 (Count Seven) (*id.* at 23) or conversion (Count Ten) (*id.* at 24), Risis's whistleblower claim has no merit as he is not a federal employee and Gengaro is not a federal defendant (*id.* at 23–24), and Risis lacks standing to assert criminal charges as a private citizen (*id.* at 22–23).

Risis contests Gengaro's characterization of the Complaint and argues it establishes subject matter jurisdiction and asserts claims under specific federal laws, including due process violations

under the Fourteenth Amendment, bankruptcy law violations under Title II of the United States Code, and, for the first time, RICO violations. (ECF No. 19[4] at 1–2.) Risis also contends the litigation privilege does not apply to fraudulent conduct, and his "claims are more than adequately pleaded," showing fraud "with sufficient particularity," as well as breach of fiduciary duty and tortious interference. (*Id.* at 2.) Risis further disputes a lack of standing, arguing he has standing to assert "civil claims for the harm caused by the fraudulent conduct of Gengaro and his co-defendants." (*Id.*) Additionally, Risis requests oral arguments be held regarding the Gengaro Motion to Dismiss and claims in-person testimony from Defendants Biase and Isabella are critical to his case. (*Id.*)

In his reply brief, Gengaro insists Risis "fails to assert any specific or cognizable violation by Gengaro" that would confer subject matter jurisdiction. (ECF No. 25 at 3.) Specifically, Gengaro contends that even if, assuming *arguendo*, Risis is asserting a 42 U.S.C. § 1983 claim that Gengaro violated Risis's due process rights under the Fourteenth Amendment, Gengaro is not a state actor and cannot be subject to § 1983 liability for merely performing duties in his capacity as an attorney. (*Id.* at 3–5.) Gengaro also argues Risis's invocation of federal bankruptcy law is too general to establish subject matter jurisdiction. (*Id.* at 6.) Regarding the RICO claims, Gengaro insists Risis: (1) fails to specify whether the claims arise under federal or state law; (2) lacks standing to assert RICO claims because he cannot show he has suffered damages proximately caused by any defendant and not by his own action; and (3) "fail[s] to plead a single predicate act" or any other statutorily required element. (*Id.* at 6–10.) Ultimately, Gengaro contends Risis does

---

[4] On October 4, 2024, Risis filed two versions of the same letter brief, the first (ECF No. 19) with an electronic signature and the second (ECF No. 22) with a proper wet signature.

not include "any actual specifics" to support his claims and is improperly attempting to find alternative relief from the Bankruptcy Case and Chancery Case. (*Id.* at 11, 13.)

### B. Trenk Motion to Dismiss

Trenk also challenges the Complaint on multiple grounds, arguing it must be dismissed because of the *Barton* doctrine and the Bankruptcy Court Order barring authority to commence litigation (ECF No. 11 at 24–26), the doctrines of claim preclusion or issue preclusion (*id.* at 26–31), or under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (*id.* at 32–39). Trenk further asserts Risis's willful violation of the Bankruptcy Court Order warrants fee-shifting and a court order barring Risis from initiating any future litigation against Trenk without first obtaining leave of the Bankruptcy Court as required under *Barton*. (*Id.* at 48.) Biase, Boms, Sodono, Isabella, and the West Orange Defendants join in the Trenk Motion to Dismiss; Biase, Boms, and Sodono also join in Trenk's reply brief. (*See* ECF Nos. 12, 14, 29.) Isabella further joins in the Gengaro Motion to Dismiss and in any additional arguments raised by co-defendants (ECF No. 20 at 4, 7), and separately advances the position the Complaint should be dismissed for insufficient pleading under Fed. R. Civ. P. 8(a)(2) (*id.* at 4–5) or as violative of the *Rooker-Feldman* doctrine (*id.* at 6–7). In addition to joining in the Trenk Motion to Dismiss, the West Orange Defendants assert Risis "failed to file or serve any notice in accordance with the [New Jersey Tort Claims Act]." (ECF No. 24 at 7.) The West Orange Defendants also suggest they are immune as public employees exercising their judgment and/or discretion and are otherwise "not liable for legislative or judicial action or inaction, or administrative action or inaction of a

legislative or judicial nature." (*Id.* at 8–9.) The West Orange Defendants further amplify the reasons for dismissal set forth in the Gengaro and Isabella Motions to Dismiss. (*Id.* at 4–5.)

In opposing the Trenk Motion to Dismiss, Risis copies and pastes large swathes of his opposition to the Gengaro Motion to Dismiss—namely, those arguments concerning the lack of subject matter jurisdiction, the applicability of the litigation privilege, and failure to meet the requirements of Rule 12(b)(6). (ECF No. 23 at 2–4.) Risis contests the applicability of *res judicata* or collateral estoppel, arguing the issues of fraud and misconduct raised were not fully litigated in the Bankruptcy Case and thus have no final judgment concerning them, he raises new and different legal issues distinct from those in the Bankruptcy Case, and the alleged legal violations committed by Defendants are so serious they "cannot be overlooked or excused." (*Id.* at 4–5.) Notably, Risis includes the first complete list of allegations against Defendants, including: (1) "fraud"; (2) "breach of fiduciary duty"; (3) "self-dealing; (4) "obstruction of justice"; (5) "abuse of process"; (6) "conspiracy to commit fraud"; (7) "illegal arrest"; (8) "corruption"; (9) "malpractice"; (10) "intimidation and harassment"; and (11) "collusion." (*Id.* at 5–6.) Risis reiterates his request for in-person oral arguments regarding the Motions and asks the Court "to launch an immediate [criminal] investigation into the actions of these defendants." (*Id.* at 7–9.) On October 28, 2024, Risis filed a document fashioned as a consolidated opposition to all motions to dismiss[5]; depending on the motion, this document is either the first or second opposition brief. (*See* ECF No. 26.) In it, Risis contends no defendant is immune from criminal liability where the complained-of conduct exceeds the scope of their official duties or is otherwise unlawful or unconstitutional. (*Id.* at 4–5.)

---

[5] This docket entry (ECF No. 26) was filed without leave of Court or other justification and thus does not comport with the requirements of the Federal Rules of Civil Procedure or Local Rules of New Jersey. Nevertheless, given Risis is proceeding as a *pro se* litigant, the Court will give this filing due consideration.

Risis also expounds somewhat on the alleged actionable actions of each defendant, for the first time, in an effort to distinguish between government actors and those with little to no official government ties. (*Id.* at 5–13.) He then repeats allegations of criminal misconduct, including wire fraud, conspiracy, racketeering, illegal eviction, false arrest, and self-dealing, against some or all defendants and renews his request for an in-person hearing on these issues. (*Id.* at 13–21.) Finally, Risis contends Defendants' Motions to Dismiss should be denied because the alleged "criminal conduct, corruption, and manipulation of the legal system is overwhelming and well-documented" and the Motions are "part of a larger strategy to delay, evade responsibility, and obstruct justice." (*Id.* at 23–24.)

Replying to both opposition briefs, Trenk argues Risis neglects to address the procedural effect of the *Barton* doctrine in barring a subsequent suit without leave of the Bankruptcy Court or the lack of subject matter jurisdiction the doctrine effectuates. (ECF No. 28 at 3–5.) Trenk also contends Risis is mistaken that *res judicata* and collateral estoppel do not both apply here, arguing "each and every aspect of Plaintiff's allegations stems from or otherwise relates to acts and affairs that transpired in connection with his bankruptcy case[,]" and the Bankruptcy Court "rendered the bankruptcy equivalent of a final judgment as to the claims and allegations made by Plaintiff against the Defendant that are improperly before the Court again today." (*Id.* at 6, 8.) Moreover, Trenk argues the Trenk Motion to Dismiss should be considered uncontested because Risis disregarded federal and local rules of procedure in filing two separate oppositions "without any explanation, leave of court, or just cause[,]" and used those filings to "inject[] new allegations and theories" in lieu of amending his Complaint in accordance with Fed. R. Civ. P. 15(a). (*Id.* at 9–10.) Even if the Court overlooks the procedural deficiencies of the two filings, Trenk insists Risis nevertheless fails to "advance [his] allegations beyond mere labels and legal conclusions" and instead "spews wild

ramblings, devoid of specifics as to time and place, and effectively characterizes the entire

bankruptcy process below as a 'fraudulent liquidation process.'" (*Id.* at 11.) Trenk also seeks to

impress upon the Court that Risis's repeated demands for in-person hearings and criminal

investigations "impose[] great needless costs . . . on a variety of parties" and "amount only to a

further attempt the abuse the federal court process for purposes of a frivolous, self-serving fishing

expedition to harass and vex his imagined enemies." (*Id.* at 12–13.) Furthermore, Trenk argues the

cases cited in Risis's second opposition filing are irrelevant and "casually 'dumped' by Plaintiff

into [the brief] in a bad faith attempt to establish the legitimacy of the instant action," and offers

to submit supplemental briefing with a case-by-case analysis of each citation. (*Id.* at 13.) Finally,

Trenk moves to join the Gengaro Motion to Dismiss and reply brief as well as the Isabella and

West Orange Defendants Motions to Dismiss. (*Id.* at 14–15.)

### C. Subject Matter Jurisdiction

First articulated by the Supreme Court in *Barton v. Barbour* and later expanded to apply

with equal force to bankruptcy and other types of proceedings, the *Barton* doctrine serves as a

procedural bar to subsequent suits against court-appointed officers. 104 U.S. 126, 128–29 (1881)

("[L]eave should first be obtained" from the appointing court before a party can initiate a lawsuit

against a court-appointed official.); *see In re VistaCare Grp., LLC*, 678 F.3d 218, 233 (3d Cir.

2012) ("A party seeking leave of court to sue a trustee 'must make a prima facie case against the

trustee, showing that its claim is not without foundation.'") (quoting *In re Nat'l Molding Co.*, 230

F.2d 69,71 (3d Cir. 1956)). As the Third Circuit explains, bankruptcy courts, "given [their]

familiarity with the underlying facts and parties, [are] uniquely situated to determine whether a

claim against a trustee has merit." *In re VistaCare Grp., LLC*, 678 F.3d at 233. *Barton* serves to

prevent a situation wherein a party seeks to improperly petition a subsequent court and wield "the

practical power [of] turn[ing] bankruptcy losers into bankruptcy winners, and vice versa." *Id.* at 228 (quoting *Matter of Linton*, 136 F.3d 544, 546 (7th Cir. 1998)). The doctrine thus effectively deprives a second court of subject matter jurisdiction over a subsequent action against the same court-appointed actors involved in the first court's proceedings. *See Smith v. Dobin*, 852 F. App'x 49, 51 (3d Cir. 2021) (affirming dismissal of civil claims against trustee based on lack of subject matter jurisdiction pursuant to the *Barton* doctrine); *In re Truong*, 763 F. App'x 150, 154 (3d Cir. 2019) ("Because the Bankruptcy Court lacked jurisdiction to consider the adversary proceeding against Barnard, the District Court properly affirmed its dismissal[.]" (citing *Satterfield v. Malloy*, 700 F.3d 1231, 1234 (10th Cir. 2012))).

Additionally, federal courts have limited original jurisdiction under 28 U.S.C. § 1331 and § 1332, which provide for federal question jurisdiction and diversity jurisdiction, respectively. See *Trinh v. Off. of Recs. Phila.*, 779 F. App'x 118, 119–20 (3d Cir. 2019) ("In order to have subject matter jurisdiction, a District Court must be able to exercise either federal question jurisdiction or diversity jurisdiction."). An action is based on federal question jurisdiction where at least one cause of action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted). In other words, the party asserting the court's jurisdiction bears the burden of explicitly pleading specific factual allegations in the complaint that invoke that jurisdiction. *Trinh*, 779 F. App'x at 120; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 (3d Cir. 1998).

Here, the Court finds no basis to exercise subject matter jurisdiction over any of the claims because Risis fails to plead the requisite factual elements.[6] Risis's filings, including the Complaint and oppositions to the various motions, merely gesture to constitutional law and federal statutes without citing specific provisions or language through conclusory statements about the Defendants' alleged transgressions lacking any specific timelines or acts. (*See, e.g.*, ECF No. 1 ¶ 2 ("This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the claims arise under federal law, specifically allegations of corruption, fraud, and violations of constitutional rights."[7]).) Risis's consolidated opposition to all Motions contains similar generalities that provide neither the requisite detail of Defendants' alleged activities nor a statutory basis. (*See, e.g.*, ECF No. 26 at 5 ("The defendants have not only violated the bounds of their official duties but have actively participated in a pattern of misconduct that includes fraud, abuse of authority, and violation of fundamental rights.").) Even in the section in which he attempts to lay out his claims against each Defendant, one by one, Risis offers only a skeleton without any of the muscle that gives force or shape, as he fails to name any allegedly violated federal statutes, much less the time, place, or manner of any allegedly unlawful activities. (*See id.* ("Donald Biase, acting as a bankruptcy trustee, was responsible for the proper management and dissolution of my estate.

---

[6] To the extent the claims concern the same set of facts as those in the Bankruptcy Case, the *Barton* doctrine would compel dismissal of the Complaint against all court-appointed defendants involved in the Bankruptcy Case as Risis did not seek leave of the Bankruptcy Court to file this suit. Risis, however, maintains this action does not challenge any defendant's conduct or action arising out of the underlying bankruptcy proceeding, and the Court makes no ultimate determinations in this regard. (*See, e.g.*, ECF No. 23 at 4–5.)

[7] To put a fine point on it, although Risis cites the federal statute that authorizes federal courts to exercise subject matter jurisdiction over claims arising from federal law in the quoted section of the Complaint, plaintiffs must identify the specific federal law(s) under which their claims arise. *See, e.g.*, *Hobson & Hobson v. Double Tree Suites by Hilton Philadelphia*, Case No. 2:20-cv-06362, 2021 WL 3260850, at *3 (D.N.J. July 30, 2021) (finding no federal question jurisdiction despite plaintiff specifically invoking a federal statute because the claim was facially frivolous).

However, instead of fulfilling his fiduciary duties, Biase grossly mismanaged the estate for personal gain. His actions included fraudulent filings and collusion with private actors, in direct violation of the trust placed in him as a trustee. One example is his exclusive use of Stack and Stack, a company co-owned by his son [] while simultaneously acting as an agent for the Southern District of New York.").) Risis's wholly conclusory Complaint—lacking in the necessary facts such as dates, times, contents of communications, and/or names of individuals involved beyond merely attaching exhibits and inviting the Court to go on a fishing expedition—cannot substantiate the alleged violations of law, much less satisfy the jurisdictional requirements.

The Court is not required to fill in the holes in a Complaint replete with ill-defined, conclusory statements about alleged legal violations and will not rewrite the Complaint to present a more clear or logical factual narrative or legal argument than the one presented. *See Shah v. Blue Cross Blue Shield of Tex.*, Civ. A. No. 16-8803, 2018 WL 1293164, at *6 (D.N.J. Mar. 13, 2018) (noting that a court will not rewrite a plaintiff's complaint to allow it to state a claim); *Miyayama v. Burke*, Civ. A. No. 20-01683, 2021 WL 6134361, at *3 (D. Nev. Dec. 29, 2021) ("While Plaintiff urges the Court to overlook [a] mistake and find the factual allegations sufficient to withstand a motion to dismiss, the Court has neither the time nor duty to rewrite Plaintiff's complaint."); *Teetz v. Bd. of Cnty. Comm'rs of Sedgwick Cnty. Kan.*, Civ. A. No. 22-1134, 2023 WL 7698030, at *5 (D. Kan. Nov. 15, 2023) ("The Court cannot consider new allegations made outside the Complaint. And the Court cannot rewrite Plaintiff's Complaint for him."). Indeed, although Risis is held to a less stringent pleading standard than that which would apply to attorney filings, *see, e.g., Mala*, 704 F.3d at 244, "this more liberal construction does not absolve *pro se* litigants of the need to adhere to the Federal Rules of Civil Procedure[,]" *Cooke*, 2024 WL 1142214 at *2.

Accordingly, Defendants' Motions are **GRANTED,**[8] and the Complaint is **DISMISSED** without prejudice and with leave to amend consistent with the guidance in this Opinion.[9]

### IV.    CONCLUSION

For the reasons set forth above, and for good cause having been shown, Defendants' Motions are **GRANTED**, and the Complaint is **DISMISSED** without prejudice and with leave to amend consistent with the guidance in this Opinion.

Date: April 30, 2025                                        */s/ Brian R. Martinotti*
                                                    **HON. BRIAN R. MARTINOTTI**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[8] Although Defendants raise several other grounds for dismissal, for purposes of judicial economy, the Court need not address them here.

[9] With respect to Risis's repeated requests for courts, including this one, to launch criminal investigations into Defendants, the Court reminds him that private citizens cannot initiate a criminal action or demand an investigation be initiated by the appropriate authorities. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (holding private citizens have no standing to challenge a prosecutor's discretion to prosecute, or not prosecute, another individual); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution"); *Wise v. Augustine*, Civ. No. 97-2651, 1997 WL 534695, at *2 (E.D. Pa. Aug. 8, 1997) ("A private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime."). "It is well established that decisions regarding the investigation and filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors, and under the separation of powers doctrine are not subject to judicial fiat." *Dewald v. French*, Civ. No. 1:22-CV-317, 2022 WL 17685115, at *7 (M.D. Pa. Mar. 10, 2022); *see also Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379-80 (2d Cir. 1973).